Please be seated. The next matter, number 172102 United States v. Caetano Oliveira. Good morning, counsel. Good morning. May it please the court. Samia Hussain for the appellant, Caetano Oliveira. I'd like to reserve one minute for rebuttal. You may have it. Thank you. I'd also like to focus my time on the 2K2.1 enhancement, and unless the court has specific questions, rest on the briefs regarding the crime of violence issue. This court should rule in favor of Mr. Oliveira because his firearms possession was coincidental and unrelated to his girlfriend's possession of marijuana in her bedroom. This court has stated in both Panetto-Peterson and other cases that mere coincidental possession is insufficient for application of the enhancement, and here we have nothing beyond coincidental presence of Mr. Oliveira's firearms alongside Ms. Gomez's marijuana in her bedroom. When Mr. Oliveira was apprehended, he was cooperative with the police and he identified the firearms as his, and when the police asked him why he was in possession of those firearms, he stated that there are still people out there who don't like me. In other words, that he possessed those firearms for his own protection, and I think that is what makes this case different from other cases that this court has reviewed with respect to this enhancement in that Mr. Oliveira's contention that he possessed the firearms for his protection is strongly grounded in facts in the record that are undisputed. Mr. Oliveira is the victim of two murder attempts. Are you conceding that the record supports the possession with intent? No, Your Honor. I think that there are two avenues here. The first is that Mr. Oliveira was not in constructive possession of the marijuana, whether it was for distribution or for simple possession, but if the court were to find that he was in constructive possession, another avenue is that the drugs were intended for simple possession only, and so there was no triggering felony, and I think the court could make that finding because the District Attorney's Office, I'm sorry, the police arrested Ms. Gomez and only Ms. Gomez for possession of the marijuana, and the District Attorney's Office decided to charge her initially with a distribution offense, but that was later lowered to simple possession. And how does that help you? It would seem to me that that would hurt you. If she entered a plea bargain, the initial charge was that she had possessed the marijuana in order to distribute it. And why does the sentencing judge have to adopt your view of the facts? I don't think that the simple possession is dispositive of the issue. Certainly the district judge has the discretion to review the facts on his own terms, but I think it's relevant, and I do think it's significant that the District Attorney's Office determined that they were unable to prove distribution against... No, we don't know that. All we know is there was a plea bargain. This happens all the time. Understood, Your Honor. But I think what's significant here is that Ms. Gomez admitted that those drugs belonged to her, and there isn't enough facts in the record to show that Mr. Oliveira was even aware of the drugs in Ms. Gomez's bedroom, let alone that he knew that they were intended for distribution. These were drugs that were in a shoebox, out of plain view. The only thing that we know that Mr. Oliveira did see was a box of sandwich bags on top of the armor where his mail and resume were located. A box of sandwich bags alone cannot lead to the inference that Mr. Oliveira was aware that Ms. Gomez may have been selling drugs from the room. I also want to turn back to the... There was a scale as well, wasn't there? Yes, Your Honor, there was a scale present in the room. And where was that? I'm sorry? Where was it? The PSR states that the scale was on a shoe rack. There's no description of the shoe rack. We don't know if it was closed or open. We don't know if the scale was under shoes or clearly visible. So I don't think that the scale... I don't think there can be an inference that Mr. Oliveira was aware of the scale. Do we know if the shoe rack was in the open or in the closet? We don't know that from the record. Turning back to coincidental possession, I wanted to mention that Mr. Oliveira was the The gun resulted in a bullet in his head. He permanently lost hearing in one ear as a result. Just a few months after that incident, he went to a baby shower with his girlfriend, and a bullet intended to kill him instead killed his girlfriend. He was severely traumatized by these events. So I think, again, this case is different in that Mr. Oliveira's contention for why he possessed the firearms is strongly grounded. Well, the problem is that you can possess the gun for more than one purpose. Yes, Your Honor, that's true. However, I think the district court erred by drawing a connection to drugs that Mr. Oliveira may not have even been aware of. Drawing a connection to his firearms there was unreasonable because he stated to the police. And I think the court should also find significant that Mr. Oliveira was cooperative. He pled guilty in this case. The only issue he has had contention with is that he didn't live in Ms. Gomez's room to a sufficient degree to have awareness of her marijuana. I'd also like to point out for the court that at the time of Mr. Oliveira's arrest, he was fully employed. The mail and the resume that were seized, did they have addresses on them? Yes, and the address on Mr. Oliveira's mail was his mother's address. The PSR also states that both his residential address and mailing address were his mother's address. The resume had a different address. It's not clear from the record whose address that was. However, we know that it was on 81 Sawtelle Avenue, which is where Ms. Gomez was living. But you're not contending he lived with his mother. I think his mail does show that he was living with his mother, and the government stated at the Rule 11 hearing that he wasn't living exclusively with Ms. Gomez. I think the inference is that he was living with his mother. Why did he have two guns there, not right next to each other, if he wasn't staying there? Both of the guns were located in the armor. One was on a shelf. One was in a clothing cube in the armor. It's not clear why beyond that Mr. Oliveira wanted to protect himself. He did point out, and the ATF agent testified at the detention hearing. No, no, no, you've missed the question. I just wanted to state that one of the guns had a broken magazine. The way that he's not staying there are the guns there. This isn't why he had guns. This is why if he wasn't staying with his girlfriend, he would keep his guns there. Your Honor, I don't think there's an inference that he was necessarily keeping the guns there. The guns were present there. He could have easily brought the guns with him for a short visit and taken them out. I don't think that we know that he was necessarily storing the guns there. So he carried around two guns at a time? It's possible, Your Honor. He did point out that one of the guns had a broken magazine, so it's possible he was in the process of. . . I don't know why he had both guns. Was the trial judge entitled to give any significance to the fact that he had a prior conviction for selling drugs and heroin was being dealt out of that same two-bedroom apartment by his girlfriend's sister? Your Honor, the prior conviction is from 2010, seven years before his sentencing in this case. That conviction also involved selling crack cocaine. So I think the facts are quite different. Regarding the drugs being sold by Ms. Gomez's sister, there's nothing in the record to show that Mr. Oliveira had any relationship with the sister, that he was ever in her bedroom or had knowledge of what was in her bedroom. And this was a house that was under surveillance for some period of time, and Mr. Oliveira was never seen with Ms. Gomez's sister, Ms. Miranda, who did conduct three controlled buys from the residence. Not only was Mr. Oliveira not seen, Ms. Gomez was not seen selling drugs during that period. The only alternative suggestion regarding the scale seems to have been that Gomez had the scale to make sure she was staying under one ounce of marijuana? Yes, Your Honor. That seems somewhat precious, given the overall situation that she would be in. If I may answer. Particularly with so little marijuana, and it was subdivided into 0.25 grams, which collectively is way under one ounce. Your Honor, the SJC did recently issue an opinion, I'm happy to submit this to the court, in which it recognized it was a medical marijuana case, and it recognized that people in Massachusetts now may possess scales to stay within the one ounce limit. The name of that case is Commonwealth v. Richardson. And in response to your question about the three bags, it's certainly possible that Ms. Gomez purchased her marijuana for her personal use in those small divisions. It just seems like somewhat of a stretch to picture someone who's living there with her sister, the heroin dealer, but on her own marijuana, she's going to go out and buy a scale just to be careful that it's always under one ounce. Your Honor, there's nothing in the record to describe Ms. Gomez's relationship with her sister. Other than they lived together in a two-bedroom apartment. Yes, Your Honor. Thank you. Good morning, Your Honors. Alexia Devencentis on behalf of the United States. Speak up, please. Yes. Because there were present here a number of factors that this Court has routinely cited as evidencing the presence of distribution as opposed to possession, I'd like to... As a citizen in the Commonwealth of Massachusetts, given the change in state law, what is a citizen who wants to comply with state law and engage in recreational marijuana use supposed to do here? The government doesn't dispute the fact that perhaps a scale could be present for the purpose of ensuring that the person remain under a particular amount of marijuana within... In fact, the Massachusetts law says that they can't be prosecuted in the Commonwealth for possession of that paraphernalia. Well, I think we have to look at the totality of the circumstances here. We have present not only a scale, which may or may not have been used for that purpose, standing alone. We have along with it sandwich baggies. We have marijuana that's broken up into separate individualized baggies alongside cash. And that evidence taken together... This case is different from some of our other cases. We're talking about a very small amount of marijuana and a very small amount of cash. It's what, $160? $160, yes. So this isn't the cases we've dealt with in the past where we found small amounts of drugs and large amounts of cash, or vice versa. Regardless, though, of what state law might say about the possession of a particular quantity of marijuana, it remains a felony offense under federal law to distribute any quantity of marijuana. And I'm still trying to figure out, I mean, given the circumstances of this case and how the prosecutor's office has to make determinations about which cases they're going to go forward with and which cases they're not. And I'm just concerned about, given the conflicts in the law, how does the government stay away from arbitrary prosecution? I don't think that in this particular case that issue arises, because what we are dealing with is a felon in possession and a simple enhancement attendant to the defendant's sentencing guidelines calculation. This is a case where the government chose to prosecute the defendant specifically for the distribution in this case. And in terms of whether or not the defendant was aware of what I think is a clear inference drawn by the district court here that there was, in fact, distribution happening, I would like to point out a few factual statements made by the defendant, one of which was that the scale was not found in plain view. There is some ambiguity in the PSR as to whether or not the scale was found on an armoire or on a shoe rack. But where the PSR is unambiguous is in stating that it was, in fact, found in plain view. And that is a statement to which the defendant did not object below. And it's also a statement that the defendant made no arguments, either in his sentencing memorandum or at the sentencing hearing, to suggest was somehow false. The district court was, therefore, entitled to take that statement as true and rely on it in its calculus here. Secondly, the defendant also at various junctures emphasizes a statement made by an ATF agent in the course of the detention hearing that the defendant had stayed at 81 Saltel Street occasionally. But here, again, I would refer the court to the PSR, where there is a report that the defendant's girlfriend stated at the time of the execution of the search warrant that, in fact, he stayed there a lot. And she also indicated at the time of the interview for the PSR that the defendant stayed primarily with her. Again, the district court was entitled to rely on those statements as evidence that, even if we don't know exactly how much time the defendant was spending there, it was a not insubstantial amount of time. And, Judge Kayada, you mentioned the presence of two firearms and raised the question of why he would have those two firearms in this house if he wasn't staying there. And I would just like to note on that point that not only were there two firearms, but one of those firearms was found in a clothing container inside an armoire. And I think there's a fair inference there that, even if perhaps one of those firearms was being transported with the defendant for his personal protection, there was a firearm that stayed and remained in that bedroom. You've certainly got a lot of – your argument is a chain of inferences. In other words, there's no direct evidence. We have to sort of infer that she was distributing, not just using. We have to infer that he was aware of it, although there's no direct evidence of that. And then we have to infer that the gun was possessed in connection with that distribution. I think the first two are certainly inferences. But this Court has routinely recognized that knowledge of distribution can be inferred by circumstantial evidence alone. Sure. Each one of them, it seems. If they're independent inferences, though, is there any point where the accumulating – in other words, if there's a 50 percent chance the first one is right, 50 percent chance the second one is right, 50 percent chance the third one is right, you're getting pretty low if they're all independent inferences that your case hangs on. If indeed there is a line somewhere there, I don't think that in this case we're anywhere near it. I think, again, there are various indicia that drug distribution was happening there. And I think that one can take the fact that there were these indicia in plain view in that bedroom, along with the fact that the defendant spent a not-insubstantial amount of time in that bedroom and reached the conclusion, first, not only that the defendant knew about the distribution that was taking place, but also that the firearm and drugs were part of a single, shared, common criminal endeavor. Take the firearms. Do I correctly understand the government's position to be, citing our case law, that there is nowhere in that apartment that he could have kept the gun where you wouldn't be able to argue that it was held in connection with the drug distribution? If we're focusing on the in connection with prong of the inquiry, application note 14 does state that there has to be some sort of close proximity. Where could he have put it in that apartment that he would say, okay, the judge could not infer? I think here the important fact is that it was in close proximity to those drugs. We're talking about a contained bedroom. No. I understand your argument not to be that it could be anywhere, but where it was found was very close to the drugs. Precisely, Your Honor. The drugs and the firearms were found in the same bedroom that the defendant shared with a person with whom he was in a close relationship. And so in the circumstances of this case, I do believe that the close proximity that would then trigger a finding that the firearm was possessed in connection with the drug offense was satisfied. And so the drug offense specifically is the marijuana, and you're not arguing that he possessed in connection with the heroin distribution? We are not. I think you can find that the enhancement was proper here based just on the marijuana found in the bedroom alone, and the government's not relying on the presence of heroin in the apartment generally. Yeah, I was struck by the government's failure to make an argument that whether it was used for the heroin or the marijuana, let's assume only the marijuana, the fact is that he's in a house where there's drug dealing by the sister, and that shows some foreseeability knowledge to him given the facts here. But the government utterly failed to make any such argument. I think we simply don't need to get to that level because we are talking about firearms and drugs that are possessed in a room where there are in plain view various items associated with drug dealing, and it's a room that the defendant stayed in frequently with a person with whom he had a close personal relationship. In the government's view, the enhancement is proper just based on those facts alone, and we don't even need to go more broad than simply the bedroom. Well, if we thought more were needed, the government's failure to make that argument counts against you. Well, this Court can, of course, affirm on any basis apparent in the record. Not always. I mean, there's a great deal of debate going on in the Court on these questions of waiver. Understood. I would just reiterate that the marijuana distribution that was happening in the bedroom was alone sufficient to find by a preponderance of the evidence that there was drug distribution happening, that the defendant was aware of it and, in fact, was participating in it. It strikes me as odd that while the house was under surveillance, the police clearly observed drug distribution via heroin, but there was never any observation of any type of marijuana distribution, and there was never a controlled buy for marijuana. I think it's important to note in that regard what surveillance precisely was happening here. The search warrant for the residence was on the basis of a handful of controlled buys, and the PSR states that there was surveillance in connection with those controlled buys. In other words, officers saw the confidential witness go in and return from the house with the heroin purchases. We're not talking about a case of 24-hour surveillance such as having a pole camera out, for example. And so unless the distribution of marijuana was happening by chance at precisely the same moment that the heroin distribution was happening, officers wouldn't have necessarily known to be aware of the marijuana distribution. So was this a confidential informant who alerted the police that heroin distribution was happening at that house and thus the follow-up with the controlled buys? That is my understanding of the record, though I will say that the record is a bit limited in terms of the information provided about how this investigation came to be. Unless the court has any further questions, the government would rest on its brief. I'd like to respond to three points. I want to reiterate what the standard is here. The government has stated that while the firearms were proximate to the drugs in Ms. Gomez's bedroom, however, proximity is not sufficient where the element of knowledge is missing. Coincidental presence, as this court has stated several times, is not enough. The guideline states that it applies where a defendant possesses firearms with knowledge, intent, or reason to believe that his firearms will be used in connection with another felony, and the government did not meet that burden here. Regarding Ms. Gomez's comment that Mr. Oliveira was present in the apartment a lot, that is ambiguous. I think it's in the eye of the beholder. And I would point this court to Hicks, which was a constructive possession case, and the facts were widely different from what's present here. I don't have the time to go through them. And then regarding the scale, the PSR objections do state that the scale was in plain view, if I may finish. However, the PSR objections also state that the scale was on top of the armoire, which is inconsistent with what the PSR itself states. Thank you. Okay. Thank you. No more questions. Thank you very much.